# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARTHUR PARRA, SR., et al., ) | |
| ) | |
| Plaintiffs, ) | No. 07 C 1506 |
| ) | |
| v. ) | Judge Darrah |
| ) | |
| LANGDON NEAL, et al., ) | Magistrate Judge Cole |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

On February 27, 2007, there was a general election in the 25th Ward of the City of Chicago. Ambrosio Medrano was a candidate for Alderman even though he was a convicted felon. Despite Mr. Medrano's 1996 felony conviction for extortion arising out of misconduct in office, he received 178 votes. (*First Amended Complaint*, ¶18). The Supreme Court of Illinois, being finicky in matters like this, concluded that Illinois law forbade Medrano's candidacy and instructed the Chicago Board of Election Commissioners not to count any votes cast for him in their final tabulation and certification. (*Id.* at ¶24). The Board abided by those instructions, and this suit followed, seeking, among other things, an order invalidating the February 27th election and providing for a new election in the 25th Ward under the supervision of the district court.

The complaint is styled as a civil rights class action brought by registered voters pursuant to 42 U.S.C. §1983, challenging what it calls the defendants' intentional retroactive invalidation of the Plaintiffs' votes for Mr. Medrano without notice and without affording them an opportunity to recast their votes after having induced them to vote according to established election procedures. The alleged conduct is claimed to be violative of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution. The First Amended Complaint also

alleges that at least two write-in votes cast on behalf of Rollande Gerard were not counted. The plaintiffs have moved to compel the production of the write-in ballots cast in the February 27th election. The defendants have objected to production.

The motion contends that the ballots are relevant "because they constitute the best evidence by which to determine the central issues of whether defendants committed voter fraud and whether defendants undermined the integrity of the Municipal General Election." (*Motion* at 3, ¶7). Not only are the ballots themselves not the best evidence of fraud, but production is unnecessary in light of the judicial admissions in the defendants' Answer to the First Amended Complaint.[1]

Paragraph 30 of the First Amended Complaint alleges, in pertinent part, that "[t]he Chicago Board of Election Commissioners' certified results do not include votes cast for Ambrosio Medrano nor do they include write-in votes, of which no less than two, under information and belief, were cast for Rollande Girard." The defendants' answer to ¶30 "admit[ted] th[is] allegation[]" and admitted the accuracy of the contents of the table tabulating the votes cast and the candidates for whom cast, set forth in ¶ 30. The answer went on to concede that any write-in votes for Rollande Girard were not counted because they were not "valid." The defendants also admitted that there were 24 write-in votes cast and that none were counted, including the at least two alleged to have been cast for Ms. Gerard. (*Answer* to ¶¶ 28, 30).

The accuracy of this construction of the Answer was expressly confirmed by the Board's counsel at oral argument on the motion.

---

[1] The ballots themselves reveal nothing beyond the fact that they exist and the candidate named in the ballot. They do not reflect the identity of the voter and do not reflect whether or not they were counted. In short, examination of the ballots would not prove the fraud alleged in the First Amended Complaint.

2

Even if the defendants are right that the outcome of the election would have been different had the 178 Medrano votes and the 24 write-in been counted, the write-in ballots themselves – and that is all the motion to compel deals with – would lead to no further information than has already been conceded by the defendants' answers to the First Amended Complaint. The identity of the candidates who received the write-in votes is not relevant since there is no contention that had the write-in votes been all for one candidate, that candidate would have won the election. Nor is there any claim in the First Amended Complaint that more than 24 write-in votes were in fact cast in the election. The only claim is that had the Medrano and write-in votes been counted, no candidate would have received a majority of the 7,034 votes, thereby requiring a run-off between the top two candidates. Whether that is true or not, need not be decided now. The defendants have admitted none of the write-in the votes were counted, thereby making the production of the ballots superfluous.

There was a time when "[t]o require the disclosure to an adversary of the evidence that is to be produced would be repugnant to all sportsmanlike instincts." 6 Wigmore, Discovery § 1845 at 490 (3rd Ed.1940). Indeed, the common law's sporting theory of justice permitted the litigant to reserve evidential resources (documents and witnesses) until the final moment, marshaling them at the trial before his surprised and dismayed antagonist. It did not openly defend or condone trickery and deception; but it did regard "the concealment of one's evidential resources and the preservation of the opponent's defenseless ignorance as a fair and irreproachable accompaniment of the game of litigation." *Id. See also* 8 Wright, Miller & Marcus, Federal Practice & Procedure: Civil 2d § 2001 at 40 (1994).

Today's attitude toward discovery is vastly different. Contrary to the common law's approach,

contemporary thought has concluded that secrecy is not congenial to truth-seeking, and that trial by ambush is incompatible with the just determination of cases on their merits. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 253 (1978) (Powell, J., concurring and dissenting); *Hickman v. Taylor*, 329 U.S. 495, 500 (1947); Rule 1, Federal Rules of Civil Procedure. By requiring comprehensive disclosure of relevant information, the Federal Rules of Civil Procedure seek to avoid the surprise and secrecy that are antithetical to the informed determination of cases of their merits. *Cf., Swierkiewicz*, 534 U.S. at 512-13; *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773 (7th Cir. 2007)("'the intent of liberal notice pleading system is to ensure that claims are determined on their merits rather than through missteps on pleading.'").

As expansive as is the definition of relevancy under Rule 401 of the Federal Rules of Evidence, *United States v. Murzyn*, 631 F.2d 525, 529 (7th Cir.1980); *United States v. Marks*, 816 F.2d 1207, 1211 (7th Cir.1987), the standard under Rule 26 is, as the text of the Rule makes clear, even broader. *See Hofer v. Mack Trucks*, 981 F.2d 377 (8th Cir.1992). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party." The evidence itself need not be admissible so long as it may lead to admissible evidence. At the same time, however, district courts enjoy extremely broad discretion in limiting the scope and sequence of discovery. *Crawford-El v. Britton*, 523 U.S. 574, 598(1998); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir.2002).

Where, as here, a party has conceded in a pleading the precise matter on which discovery is sought *and* where the discovery will not lead to other relevant information, discovery may be denied. *Cf. Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 2007 WL 1673563 at *6 (N.D.Ill.

4

2007)(plaintiff's insistence that it would not use the information sought in discovery made the request for the information irrelevant); *Autotech Technologies Ltd. Partnership v. AutomationDirect.com, Inc.*, 2007 WL 2746654 at *3 (N.D.Ill. 2007)(plaintiff's analysis of its own claim made irrelevant information sought in discovery that was outside the scope of that claim); *Compare Brooklyn Life Insurance Co. v. Dutcher*, 95 U.S. 269, 272 (1877)("[t]he law never requires an idle thing to be done."); *Rockstead v. City of Crystal Lake*, 486 F.3d 963, 965-966 (7th Cir. 2006) (Posner, J.) ("recourse to state remedies would indeed be pointless and would therefore not be required."). The denial of the motion to compel does not in the slightest harm the plaintiffs or deprive them of any information to which they are entitled. It does, however, obviate the need to consider the argument advanced by the defendants that production is prohibited by state law.

In short, under the circumstances of this case, it is an appropriate exercise of the broad discretion accorded judges under the Federal Rules of Civil Procedure to deny the motion.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 1/24/08

5