UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTHUR PARRA, SR.; KIM ENG; VAL ENG; LAURA ENG; KAM WAN CHAN; EVA CHAN; PETER CHAN; and ANTONIO VALENZUELA, <br><br> Plaintiffs, <br><br> v. <br><br> LANGDON NEAL, Chairman; RICHARD COWEN, Secretary; MARISEL A. HERNANDEZ, Commissioner; LANCE GOUGH, Executive Director; members and directors, respectively of the CHICAGO BOARD OF ELECTION COMMISSIONERS, all in their official capacities, <br><br> Defendants. | No. 07 C 1506 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, voters in the Chicago Municipal General Election of February 27, 2007, brought suit against Defendants, the Chicago Board of Election Commissioners and its members, pursuant to 42 U.S.C. § 1983, alleging violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Before the Court are the parties' cross-motions for summary judgment.

### UNDISPUTED FACTS

The following facts are taken from the Local Rule 56.1(a)(3) statements of material facts submitted by the parties. Contrary to Local Rule 56.1(b)(3), Plaintiffs failed to file a response to Defendants' 56.1(a)(3) statement. Therefore, Defendants' factual allegations are deemed to be

admitted. *See Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (*Malec*) (moving party's factual allegations are deemed admitted if non-moving party fails to respond).

Plaintiffs Arthur Parra, Sr., Kim Eng, Val Eng, Kam Wan Chan, Evan Chan, Peter Chan and Antonio Valenzuela are registered voters in the City of Chicago. (Defs.' 56.1(a)(3) ¶ 1.) Plaintiffs brought this action pursuant to 42 U.S.C. § 1983, alleging that Defendants intentionally retroactively invalidated Plaintiffs' votes for Alderman of the 25th Ward of the City of Chicago in the February 27, 2007 Municipal General Election. (Defs.' 56.1(a)(3) ¶ 3.)

Defendants Langdon Neal, Richard Cowen and Marisel Hernandez are members of the Chicago Board of Election Commissioners ("the Board"), duly appointed under state law and charged with carrying out the duties and responsibilities entrusted to the Board. (Defs.' 56.1(a)(3) ¶ 4.) The Board constitutes the duly constituted Electoral Board for the City of Chicago, organized pursuant to state law to hear and pass upon objections to the nomination papers for candidates to be elected at the Municipal General Election. (Defs.' 56.1(a)(3) ¶ 5.) Defendant Lance Gough is the Executive Director of the Board and is charged with carrying out the administrative duties and functions of the Board. (Defs.' 56.1(a)(3) ¶ 6.)

In December 2006, Ambrosio Medrano, Cuahutémoc Morfin, Daniel "Danny" Solis, Aaron Del Valle, Juan M. Soliz, Joe D. Acevedo and Martha Padilla filed nomination papers with the Board, requesting to be placed on the ballot for the Municipal General Election as candidates for office of Alderman of the 25th Ward. (Defs.' 56.1(a)(3) ¶ 7; Pls.' 56.1(a)(3) ¶ 3.) In January 2007, the Board heard and passed on objections filed by Nicolas J. Delgado, Maria Godinez and Diana G. Garcia (the "Delgado Objectors") against the nomination papers filed by Medrano. (Defs.' 56.1(a)(3) ¶ 8.) The Delgado Objectors alleged that the Illinois

Municipal Code, 65 ILCS 5/3.1-10-5(b), barred Medrano from holding the office of Alderman due to Medrano's 1996 conviction of felony extortion arising out of his misconduct while in the office of Alderman. (Defs.' 56.1(a)(3) ¶ 9.) On January 12, 2007, the Board overruled the Delgado Objections and ordered that Medrano be placed on the ballot as a candidate for Alderman of the 25th Ward. (Defs.' 56.1(a)(3) ¶ 10.)

From January 18, 2007 through February 22, 2007, the Board accepted applications for absent voters' ballots for the Municipal General Election in person or by mail. (Defs.' 56.1(a)(3) ¶ 12.) During this period, twenty-one people voted for Medrano by absentee ballot. (Pls.' 56.1(a)(3) ¶ 10.) From January 31, 2007 and February 13, 2007, the Board offered grace-period voting at its office. (Pls.' 56.1(a)(3) ¶ 14.) During that time, two people voted for Medrano as grace-period voters. (Pls.' 56.1(a)(3) ¶ 15.) From February 5, 2007 through February 22, 2007, the Board offered early voting at fifty sites throughout Chicago. (Defs.' 56.1(a)(3) ¶ 15.) During this period, sixty-seven people voted early for Medrano. (Pls.' 56.1(a)(3) ¶ 15.)

The Delgado Objectors filed a petition for review with the Circuit Court of Cook County (Defs.' 56.1(a)(3) ¶ 11.) On January 26, 2007, the Circuit Court of Cook County affirmed the Board's decision to place Medrano on the ballot. (Defs.' 56.1(a)(3) ¶ 13.)

The Delgado Objectors appealed the Circuit Court's decision directly to the Illinois Supreme Court. (Defs.' 56.1(a)(3) ¶ 14.) On February 23, 2007, the Illinois Supreme Court vacated the judgment of the circuit court and remanded the case to the circuit court, with instructions to enter judgment vacating the Board's decision and directing it to: (1) declare that Medrano is ineligible to run for office of Alderman pursuant to Illinois Municipal Code, 65 ILCS 5/3.1-10-5(b); (2) reject his nomination papers; and (3) remove his name from the ballot for the

upcoming election. (Defs.' 56.1(a)(3) ¶ 16.) The Illinois Supreme Court further provided that, "[i]f removal of Mr. Medrano's name from the ballot cannot be accomplished prior to election day, the Election Board shall be required to disregard any votes cast for him in determining the winner of the election." (Defs.' 56.1(a)(3) ¶ 17.) On the same day, February 23, 2007, the Circuit Court of Cook County, pursuant to the Illinois Supreme Court's order, entered an order complying with the order of the Illinois Supreme Court. (Defs.' 56.1(a)(3) ¶ 18.)

Between the afternoon of February 23, 2007 and 6:00 a.m., February 27, 2007, the Board did not have the capability of removing Medrano's name from either the optical scanning or the touchscreen balloting systems. (Defs.' 56.1(a)(3) ¶¶ 19, 21, 22.) Defendant Gough directed that notices, printed in English, Spanish and Chinese, be posted immediately in the in-House absentee voting site to inform voters that votes cast for Medrano would not be officially counted, tabulated or reported by the Board. (Defs.' 56.1(a)(3) ¶ 23.) Gough directed that similar notices be prepared for the polling places in the 25th Ward with instructions to the judges of election to provide a copy of the notice to each voter. (Defs.' 56.1(a)(3) ¶ 24.) On February 26, 2007, the Board met in order to consider the Delgado Objections on remand and entered an order reflecting the mandate of the court. (Defs.' 56.1(a)(3) ¶ 25.) On February 27, 2007, eighty-eight people voted in person for Medrano. (Pls.' 56.1(a)(3) ¶ 32.)

On March 20, 2007, the Board issued its official tabulated statement of returns and proclamation of results, which reflected that candidate Solis won the election for Alderman in the 25th Ward by receiving 3,522 votes of the 6,854 votes cast and counted.[1] (Defs.' 56.1(a)(3)

---

[1] Previously, on March 2, 2007, in response to a FOIA request, the Board had provided a copy of the preliminary and unofficial Ward 25 totals as they existed as of 9:22 a.m. on March 2, 2007. (Defs.' 56.1(a)(3) ¶ 27.) As of that time, the Board had not yet completed

4

¶ 31.) As directed by the Illinois Supreme Court, the Board did not count the votes cast for candidate Medrano, which totaled 178.[2] (Defs.' 56.1(a)(3) ¶ 32.) The Board's March 20, 2007,

counting provisional ballots or the absentee ballots and had not commenced the official canvass of results. (Defs.' 56.1(a)(3) ¶¶ 28-30.) The following chart reflects the vote totals reported on March 2, 2007, in response to the FOIA request. (Pls.' 56.1(a)(3) ¶ 35.)

| Candidate | Votes Received | Percentage of Votes Cast |
|---|---|---|
| Daniel "Danny" Solis | 3,520 | 49.95% |
| Cuahutémoc Morfin | 1,534 | 21.77% |
| Ambroiso Medrano | 178 | 2.53% |
| Aaron Del Valle | 326 | 4.63% |
| Juan M. Soliz | 625 | 8.87% |
| Joe D. Acevedo | 291 | 4.13% |
| Martha M. Padilla | 549 | 7.79% |
| Write-In | 24 | 0.34% |
| Total | 7,047 | 100% |

[2] The following chart reflects the vote totals reported in the official results issued on March 20, 2007. (Pls.' 56.1(a)(3) ¶ 39.)

| Candidate | Votes Received | Percentage of Votes Cast |
|---|---|---|
| Daniel "Danny" Solis | 3,522 | 51.39% |
| Cuahutémoc Morfin | 1,535 | 22.40% |
| Aaron Del Valle | 329 | 4.80% |
| Juan M. Soliz | 627 | 9.15% |
| Joe D. Acevedo | 291 | 4.25% |
| Martha M. Padilla | 550 | 8.02% |
| Total | 6,854 | 100% |

official tabulated statement and proclamation of the results reflected that write-in candidate Rollande Girard, who had registered as a write-in candidate for Alderman of the 25th Ward, received no (0) write-in votes. (Defs.' 56.1(a)(3) ¶ 33; Pls.' 56.1(a)(3) ¶ 18.)

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994). Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S.

6

at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## ANALYSIS

Plaintiffs allege that Defendants violated the Equal Protection Clause of the Fourteenth Amendment when they "retroactively invalidated" votes cast for Medrano without affording Plaintiffs an opportunity to recast their votes. Plaintiffs allege that Defendants violated the Due Process Clause of the Fourteenth Amendment when they "induced Plaintiffs to rely on their official pronouncements . . . only to retroactively invalidate the votes cast by the Plaintiffs" for Medrano. Plaintiffs ultimately seek an order invalidating the Board's certification of the election results and either a new election or run-off election between the declared winner, Solis, and Morfin, who received the second most votes. Plaintiffs argue that had the 178 votes cast for Medrano been counted, and had the 24 write-in votes that Plaintiffs claim were cast for Rollande Girard been counted, Solis would not have won over fifty percent of the vote.[3]

To establish a violation of § 1983, Plaintiffs must prove "willful conduct which undermines the organic process by which candidates are elected." *Bodine v. Elkhart County Election Board*, 788 F.2d 1270, 1272 (7th Cir. 1986) (quoting *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975)). Here, even Plaintiffs' allegations do not come close to meeting this standard. As detailed above, the order from the Illinois Supreme Court to remove Medrano from the ballot came on February 23, 2007, just four days before the day of the election. The Board

---

[3]Plaintiffs offer nothing but speculation and faulty reasoning in support of their claim that Rollande Girard received any write-in votes.

7

was unable to remove Medrano's name from the ballot on such short notice.[4] The Board took reasonable steps to inform voters that votes for Medrano would not be counted. However, at that time of the Illinois Supreme Court's order, various forms of early voting had been ongoing for over a month. Thus, it was not possible for the Board to reach all voters before some votes for Medrano were cast. Considering the undisputed record of the Board's action, the steps taken following the order of the Illinois Supreme Court do not amount to willful conduct that undermines the electoral process, which is required to constitute a violation of § 1983.

Furthermore, even if the Medrano votes were counted in the total, the numbers still do not lead to the relief sought by Plaintiffs, namely a court-ordered run-off between Solis and Morfin. According to the Board's official results, Solis received 3,522 of the 6,854 votes cast, or roughly 51.4 percent of the vote. If the 178 votes cast for Medrano were included in the total, Solis still would have received 50.08 percent of the vote. As mentioned above, Plaintiffs argue that twenty-four additional write-in votes should be counted in the total. However, they provide nothing more than speculation that these votes were cast for a valid write-in candidate. *See* 10 ILCS 5/18-19.1 (write-in votes should be counted only for persons who have timely filed notarized declarations of intent to be a write-in candidate). It is not disputed that Rollande Girard filed the required declaration, but Plaintiffs have presented no evidence that Girard received any write-in votes.

---

[4]In their opposition brief, Plaintiffs attempt to dispute this point, claiming that the affidavit supporting this statement, that of Defendant Gough, does not cite concrete facts establishing its truth. However, as Gough has been Executive Director of the Board for twenty years, he is competent to assess the feasibility of removing a candidate's name from the ballot on such short notice. In any case, this dispute has already been decided in Defendants' favor because Plaintiffs failed to respond to Defendants' Local Rule 56.1(a)(3) statement of material facts and, thus, this point is admitted for purposes of this motion. *See Malec*, 191 F.R.D. at 584.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted. Plaintiffs' motion for summary judgment is denied.

Dated: 2-5-09

JOHN W. DARRAH
United States District Court Judge